783 So.2d 478 (2001)
STATE of Louisiana
v.
Ricky D. POWELL (Sentenced as "Ricky B. Powell").
No. 00-KA-1729.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2001.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Counsel for Ricky D. Powell, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux *479 (Appellate Counsel), Ken J. Dohre (Trial Counsel), Assistant District Attorneys, Gretna, Counsel for the State of Louisiana, Appellee.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and PATRICK M. SCHOTT, Pro Tempore.
CHEHARDY, J.
On July 15, 1996, the Jefferson Parish District Attorney filed a bill of information charging defendant, Ricky Powell, with unlawful possession of a firearm by a convicted felon. La. R.S. 14:95.1. Defendant was arraigned on July 18, 1996 and pleaded not guilty.
Defendant was tried by a twelve-member jury on March 19, 1997. On that day, the jury returned a verdict of guilty as charged. On May 19, 1997, the trial court sentenced defendant to ten years at hard labor without benefit of parole, probation or suspension of sentence. The court also imposed a fine of $1,000.00.
On February 9, 1998, defendant filed a Motion for Out-of-Time Appeal and Appointment of Counsel in the trial court. The court denied the motion on February 17, 1998, citing defendant's failure to properly raise the issue in an application for post-conviction relief. On March 19, 1999, defendant filed a Uniform Application for Post-Conviction Relief, in which he requested an out-of-time appeal based on ineffective assistance of counsel. The trial court denied defendant's application on March 30, 1999, on grounds that defendant's proper remedy was through a writ application to this Court seeking review of the trial court's February 17, 1998 ruling.
Defendant filed an application for a writ of review with this Court on April 21, 1999. This Court denied writs on April 23, 1999, stating, "This application is transferred to the district court for consideration as a post conviction application seeking reinstatement of relator's right to an appeal. State v. Counterman, 475 So.2d 336 (La. 1985)." State v. Powell, 99-447 (La.App. 5 Cir. 4/23/99). On June 3, 1999, the trial court issued an order granting defendant's application for post conviction relief and reinstating his appeal.

FACTS
At about 10:45 p.m. on July 4, 1996, Eugene Stensaker and his wife Michelle were in bed in their home on Red Cedar Drive in the Woodmere Subdivision of Harvey. Mr. Stensaker testified that he heard noises that did not sound like holiday fireworks. He went to a window to investigate, and saw two men in the driveway of a house directly across the street, taking turns firing a handgun into the air. Ms. Stensaker also saw the men through a window and recognized one of them as defendant, Ricky Powell, who lived with his mother in the house directly across the street.
The couple called police, then went to the front door of their house, where their daughter stood watching the men. Mr. Stensaker testified that he recognized one of the shooters as defendant. The two men left the area in defendant's car.
Ten minutes later, Deputy Alvis West of the Jefferson Parish Sheriffs Office reported to the scene. Mr. Stensaker told the officer he had seen defendant and another man firing a gun in the driveway of 3844 Red Cedar Lane. He described defendant as wearing a red tank top and dark-colored shorts. Deputy West testified that he did not interview Ms. Stensaker at that time.
Deputy West testified that he found 19 spent bullet casings from a .380 automatic pistol in and around the driveway of defendant's house. He and a crime scene technician *480 collected the casings.[1] The Stensakers notified the Sheriffs Office when defendant returned to his mother's house about an hour later. Deputy West returned to the scene and placed defendant under arrest. Defendant was wearing a red tank top and dark-colored shorts at the time of his arrest. West testified that he did not recover a gun from defendant.
Both Mr. and Ms. Stensaker identified defendant at trial as one of the men who fired the gun on July 4, 1996.
As proof that defendant was a convicted felon, the State introduced a certified copy of documents evidencing defendant's 1991 Orleans Parish conviction for distribution of cocaine, and the court allowed them to be admitted.
Defendant introduced the testimony of his friend Gregory Rushing, who stated that defendant was with him between 3:00 p.m. and just before midnight on July 4, 1996. According to Rushing, defendant went to his Gentilly home to help him pressure-wash his driveway. The two then went together to a party in the Woodmere Subdivision, where Rushing performed as disc jockey. The party was five to ten minutes from defendant's house. Defendant and Rushing left the party together between 10:30 and 11:00 p.m., and defendant dropped Rushing off at his house. Defendant left Rushing's house at about 11:45 p.m. Rushing further testified that defendant was wearing a pair of Girbaud brand blue jeans that night and was not wearing a tank top.
Defendant testified on his own behalf. He acknowledged he was aware that, as a convicted felon, he was not allowed to possess a firearm; he said he has not been in possession of a firearm since his parole. He stated that he was at Rushing's house during the afternoon of July 4, 1996.[2] At about 6:30 p.m., he and Rushing drove to a party at the home of defendant's girlfriend. Defendant testified that he did not leave the party. At about 11:30 p.m., he and Rushing drove to Rushing's house. Defendant went directly home, arriving there at about midnight. He then took off his clothes to prepare for bed. When officers arrived at his house, they found him in his sleeping attirea tank top and underwear.
Defendant testified that he did not fire a gun in front of his house on the night of July 4, 1996 and that he did not know who had done so. He speculated that members of one of the many neighborhood gangs may have been responsible.

ASSIGNMENT OF ERROR NO. 1
The evidence was insufficient to support this conviction.
By this assignment, defendant argues the evidence at trial was insufficient to support his conviction for the offense of unlawful possession of a firearm by a convicted felon, because the State failed to prove he possessed a firearm.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443, U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291.
The elements necessary to sustain a conviction under La. R.S. 14:95.1 are (1) possession of a firearm, (2) prior conviction *481 of an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
Defendant contends the State's witnesses were not credible. He first asserts that the Stensakers' report to police was based on bad feelings towards him based on a dispute over the Stensakers' used washer and dryer. Mr. Stensaker testified that a year before the shooting incident, he agreed to sell his used washer and dryer to defendant for $50.00. Defendant did not have the money at the time of sale, so Mr. Stensaker agreed to let him pay later. Several weeks thereafter, defendant gave the Stensakers $20.00, but never paid the balance of the money owed. Mr. Stensaker testified that he bore defendant no ill feelings over the money owed and that his report to police had nothing to do with the sale of the washer and dryer.
Yvonne Powell, defendant's mother, described the transaction differently in her testimony. She stated that the Stensakers left the washer and dryer in front of their house, as if they were intended for garbage pickup. The couple later went to her home and accused defendant of "ripping them off." Ms. Powell further testified that the Stensakers seemed upset about the washer and dryer, and that they threatened to call police. However, on cross-examination, Ms. Powell conceded that the night the confrontation with the Stensakers over the washer and dryer occurred was months before the shooting incident of July 4, 1996.
Defendant further argues that Mr. Stensaker offered conflicting testimony regarding his certainty about his identification. The record does not support that assertion. Mr. Stensaker testified that when he first viewed the two shooters from his window, he could not tell who the men were. He was not sure defendant was one of them until his wife looked at the men and told him one of them was defendant. It was then that he recognized defendant himself. Mr. Stensaker also positively identified defendant in court.
Defendant next complains that Ms. Stensaker's testimony was suspect because she discussed the case with her husband several times prior to trial and that her testimony was based on those discussions, instead of on what she witnessed. On cross-examination, defense counsel asked Ms. Stensaker whether she had discussed the shooting incident with her husband prior to trial. Ms. Stensaker replied that she had. Those discussions helped to refresh her memory of the shooting incident, since a long time had passed between the incident and the trial. Ms. Stensaker also testified that she and her husband did not discuss what they would say at trial in response to specific questions. She stated that she was quite certain defendant was one of the shooters.
Defendant further notes that the clothing description given by Ms. Stensaker differed from that of defense witness Gregory Rushing and argues that Ms. Stensaker must have been mistaken in her description. Ms. Stensaker testified at trial that defendant wore a red tank top and dark-colored shorts at the time of the incident. Mr. Stensaker gave the same description during his interview with Deputy West. West testified that when he apprehended defendant an hour after the shooting, defendant was wearing a red tank top and dark shorts.
Defendant's arguments bear not on the sufficiency of the evidence, but on its weight. It is well-settled that it is not the appellate court's function to assess the credibility of witnesses or re-weigh evidence. State v. Wilkinson, 00-339 (La. *482 App. 5 Cir. 10/19/00), 772 So.2d 758. In the instant case, the jury weighed the evidence presented by the State and the defense and, apparently, found the State's witnesses to be more reliable.
Defendant contends that the State's proof of a weapon was lacking because no gun was ever sought or recovered by the investigating officers. When questioned by the defense, Deputy West testified that he did not search for a gun at defendant's house at the time of arrest because he had no search warrant. Nor did he feel he had the probable cause necessary to support a search warrant.
The officer's handling of the investigation is logical, considering that defendant had been away from the scene of the shooting for at least an hour prior to his arrest, enough time to dispose of a weapon. Despite the fact that no gun was introduced as evidence at trial, there was sufficient evidence to prove that defendant in fact possessed a firearm. There were the eyewitness accounts of the Stensakers, who watched from across the street as defendant fired a gun in what they described as a well-lighted area. The numerous spent bullet casings collected from defendant's driveway also lend support to the Stensakers' testimony.
Based on the foregoing, we find that the evidence adduced at trial was sufficient under Jackson to support defendant's conviction.

PATENT ERROR REVIEW
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). We note one patent error, which may be corrected easily.
At his May 19, 1997 sentencing, the trial court properly apprised defendant of the three-year limitation for applying for post-conviction relief then in effect at that time under La.C.Cr.P. art. 930.8. The amendment to article 930.8, which took effect on August 15, 1999, shortens the prescriptive period to two years. The amended prescriptive period applies retroactively to defendant. See, State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059. This may be corrected by the trial court's sending the defendant the appropriate information.
For the foregoing reasons, the defendant's conviction is affirmed. The matter is remanded and IT IS ORDERED that the district court send defendant written notice of the time limitation for post-conviction relief within ten days of the rendering of the opinion in this case and file written proof in the record that defendant received such notice. See, State v. Maise, 99-734 (La.App. 5 Cir. 3/22/00), 759 So.2d 884.
AFFIRMED.
NOTES
[1] Mr. Stensaker testified that he helped the officer collect the shell casings.
[2] Defendant also referred to Gregory Rushing as "Karl."