822 So.2d 844 (2002)
STATE of Louisiana
v.
Sherman WILDER.
No. 02-KA-229.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
Paul D. Connick, Jr., District Attorney District, Terry M. Boudreaux, Alan D. Alario, II, Assistant District Attorneys, Gretna, LA, for Appellee.
Bruce G. Whittaker, New Orleans, LA, for Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant appeals his conviction for being a convicted felon in possession of a firearm, asserting that evidence of his predicate conviction was legally insufficient. For the following reasons, we affirm.
On December 14, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Sherman Wilder, ("Wilder"), with being a convicted *845 felon in possession of a firearm in violation of LSA-R.S. 14:95.1. Wilder was arraigned on December 16, 2000 and pled not guilty. On September 25, 2001, Wilder was tried before the judge who found him guilty as charged; on that same day, Wilder waived sentencing delays, and the trial court sentenced him to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence. On September 25, 2001 Wilder also orally moved for an appeal. On September 27, 2001, Wilder filed a written notice of intent to appeal, which was granted. Wilder then filed a pro se motion for appeal on October 8, 2001.
The following facts were elicited at trial: Detective Gary Barteet of the Jefferson Parish Sheriffs Office, who was called as a witness by the state, testified that, on November 24, 2000, at approximately 2:30 a.m., he was at the Villa D'Ames apartment complex assisting a deputy with a call. While Detective Barteet was on the scene, witnesses stated that several black males in a white Dodge Intrepid had fired several rounds into the apartment complex and then fled the scene. Detective Barteet testified that, earlier in the evening, he and other officers had responded to a call in Bridge City at the "Saliton Stripes and Lounge." The call involved a large fight where a black male stated he was going to his vehicle to get a gun. Detective Barteet learned that members of the group involved in the fight were possibly wanted for an aggravated battery. He also was informed that the vehicle was a white Dodge Intrepid with license plate number IXL218. Detective Barteet ran the license plate number through his computer and found out that the vehicle was registered to an individual later identified as Rubin Marshall. He learned that the registered address was on Heather Street.
Detective Barteet and other deputies began traveling through that area. Another deputy advised Detective Barteet that he had just seen a white Dodge Intrepid pass him on Wayne Street going northbound. Detective Barteet was on Heather Street going westbound at the time. As he pulled up to the intersection of Wayne and Heather Streets, he saw a white Dodge Intrepid go through the stop sign without stopping. Detective Barteet initiated a traffic stop for the failure to stop at the stop sign. With the aid of other units, he was able to stop the vehicle at the corner of Wayne and Bueller Streets. Detective Barteet testified that Sherman Wilder stepped out holding what appeared to be a handgun in his right hand. Wilder turned and faced Detective Barteet, and then briefly looked around. Detective Barteet thought Wilder was going to try and run. Wilder made a movement or a motion back toward the vehicle. When Wilder came back out, Detective Barteet did not see a handgun. Wilder complied with all of the officer's commands.
Detective Barteet testified that Wilder appeared to be intoxicated or under the influence of narcotics. Wilder appeared visibly shaken, like "he had just done something wrong." Detective Barteet testified that it was dark and raining during this encounter. However, the headlights and spotlights of the vehicles were shining on Wilder. When Detective Barteet initiated the stop, he noticed a black male sitting on the porch of one of the houses. He didn't see any other individuals in the area. While Detective Barteet was searching Wilder, Officer Williams advised Detective Barteet that there was a gun on the floor board of the vehicle. Detective Barteet walked over to the vehicle and saw the gun on the floor directly underneath the steering wheel.
*846 Officer Wayne Williams of the Gretna Police Department, who was called as a witness by the state, testified at trial, and his testimony largely corroborated that of Detective Barteet. Deputy Barteet told Officer Williams over the radio that he was about to pull over a white Dodge Intrepid that fit the description of the vehicle involved in the aggravated criminal damage at the Villa D'Ames apartment complex. Approximately 30 seconds elapsed from the time Officer Williams received the call until the time he arrived on the scene at Wayne and Bueller Streets. Upon his arrival, Officer Williams saw Wilder standing next to the driver's side of the vehicle. Detective Barteet asked Officer Williams to inspect the vehicle because Wilder had made motions to the interior of the vehicle with his hands. Officer Williams found a gray-colored Ruger lying on the center of the floor board on the driver's side that was plainly visible from the open door. The butt of the weapon was facing the pedals of the vehicle, and the nose of the weapon was facing the seat area. Officer Williams testified that four officers were on the scene. He stated that they scanned the surrounding area because it was late at night and the area was known for high drug and criminal activity. Officer Williams testified that the area where Wilder was stopped was well lit from the spotlights and takedown lights on his police car, and from the lights from the three other police vehicles.
Carolyn Ann Stevens, who was called as a witness by the defense, testified that she lived at 528 Wayne Avenue on November 24, 2000, and that she witnessed the incident involving Wilder. Ms. Stevens testified that Wilder stopped at the stop sign at Wayne and Heather Streets. She testified that she was sitting outside in front of her house when she saw Wilder pull up in the vehicle and the police pull up behind him with no lights on. She stated that the officers had their weapons drawn and told Wilder to get out of the vehicle. She claimed that the vehicles stopped directly in front of her driveway. Ms. Stevens testified that when Wilder got out of the vehicle, he had nothing in his hands. She said that Wilder made no motions toward his vehicle.
Ms. Stevens saw the officer bend over, search the vehicle and find the weapon. She heard the officer say, "Ah-ha, we have the weapon." Ms. Stevens testified that the officers told her to go inside. Ms. Stevens went inside and directly to the window in her bedroom so she could see everything that was occurring. She stated that none of the vehicles turned on their spotlights toward Wilder. Ms. Stevens claimed that there were nine or ten police vehicles at the scene. Ms. Stevens testified that the lights were not turned on until the officers began searching the vehicle. She said that one officer searched the vehicle first, but found nothing. Another officer came and searched, and he looked under the seat and found the weapon.
On cross-examination, Ms. Stevens admitted she was friends with Wilder, and that she had known him since 1986. She also stated she was a friend of the family. Ms. Stevens testified that Wilder had parked in front of her house that night because it was Thanksgiving, and he had spent Thanksgiving earlier that day at her house. She claimed that it was not raining when the officers pulled him over. Ms. Stevens testified that Wilder was driving a friend's vehicle that night, and that it was the first time she had ever seen Wilder in that vehicle.
Sherman Wilder testified that, on November 24, 2000, at approximately 2:30 a.m., he returned to Ms. Stevens' house. He pulled over, got out of the vehicle, took two steps and noticed headlights. When *847 Wilder looked up, he saw the police with their guns drawn. They told him to put his hands up which he did. They told him to go to the back of the vehicle. When he did so, they put him on his knees. They told him they stopped him because he had run a stop sign. When they came back, they told him they had found a weapon, and they put handcuffs on him. Wilder testified that the vehicle belonged to his friend, Rubin Marshall. Wilder stated that he had used the vehicle to go around the corner to his grandmother's house on Louisiana Street, which was approximately five to seven minutes away from Heather Street. He testified that he was coming back from his grandmother's house when the police stopped him. He admitted on cross-examination that he had been drinking that evening. Wilder testified that he had previously been convicted of possession of cocaine, and that was why he had been charged with being a convicted felon in possession of a firearm. He testified that he did not know whose gun was in the vehicle, and that he had never seen that gun before. Wilder stated he didn't know the gun was in the vehicle.

LAW AND ANALYSIS
In his first assignment of error, Wilder argues that the evidence of his predicate conviction was legally insufficient. Specifically, Wilder argues that the state failed to provide sufficient evidence to support his conviction for possession of a firearm by a convicted felon. Wilder further argues that the state failed to prove he had a prior conviction.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia[1] requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the elements of the crime in the light most favorable to the prosecution, to find the essential elements of the offense were proven beyond a reasonable doubt.[2]
Wilder was convicted of possession of a firearm by a person convicted of a felony, a violation of LSA-R.S. 14:95.1, which provides as follows:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.
B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:

*848 (1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
(2) Upon completion of sentence, probation, parole, or suspension of sentence the convicted felon shall have the right to apply to the sheriff of the parish in which he resides, or in the case of Orleans Parish the superintendent of police, for a permit to possess firearms. The felon shall be entitled to possess the firearm upon the issuing of the permit.
(3) The sheriff or superintendent of police, as the case may be, shall immediately notify the Department of Public Safety, in writing, of the issuance of each permit granted under this Section.
The elements necessary to sustain a conviction under LSA-R.S. 14:95.1 are (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime.[3]
In the instant case, the record reflects that defense counsel stipulated to the prior conviction before trial:
MR. GRISBAUM: [Prosecutor]
Your Honor, before we do that, defendant is charged with Revised Statute 1495.1[sic], that's felony possession of a firearm. It is my understanding that defense will stipulate to the prior conviction. I have a certified copy of that conviction. At least I did. I was going to offer, file and introduce that into evidence. If I could have one second to grab it.
I apologize, Your Honor. Here it is. And I'll mark it as State's Exhibit-1.
THE COURT:
Is that stipulation acceptable to the defense?
MR. BROWN: [Defense counsel]
Yes, Your Honor.
During trial, Wilder admitted on cross-examination that he had been convicted of possession of cocaine. He stated as follows:
MR. GRISBAUM:
Q. Mr. Wilder, you were convicted of possession of cocaine, is that correct?
DEFENDANT:
A. Yes, sir.
MR. GRISBAUM:
Q. And that's why you're charged with the offense today, is that correct?
DEFENDANT:
A. Yes sir.
Further, during closing argument, defense counsel conceded that Wilder had a prior conviction within the ten-year prescriptive period:
MR. BROWN:
Now, earlier, I had statedI had cited State v. Ware, a Fifth Circuit Court of opinion case which gave elements that the State had to prove. And the State The court said the State had to prove possession of the firearm; it had to prove the conviction of a numerated [sic] felony in a ten year prescriptive period, that he fell within that period as a convicted felon; and the general intent to commit the offense. Now, with regard to the second element, we concede on *849 that. Mr. Wilder is convicted of possession of cocaine, which is well within the prescriptive period.
Before the trial judge found Wilder guilty of being a convicted felon in possession of a firearm, the trial judge, noting the stipulation, stated:
Mr. Wilder, the State of Louisiana alleged that you were a convicted felon in possession of a firearm. After hearing the original motion, taking that into account, hearing this trial, the Court is of the opinion that, per your stipulation, you were a convicted felon. And based upon the testimony the Court is of the opinion that you possessed a firearm that night. As such I'm going to find you guilty of possession of a firearm by a convicted felon.
It is clear that Wilder stipulated to the prior conviction before trial. In addition, Wilder testified that he had been convicted of possession of cocaine. He admitted that was the reason he was charged with being a convicted felon in possession of a firearm. During closing argument, defense counsel conceded that Wilder had a prior conviction for possession of cocaine, and that the conviction fell within the ten-year prescriptive period.
Based on the foregoing, we find that the evidence of defendant's predicate conviction was legally sufficient. Accordingly, this assignment is without merit.
Wilder also assigned as error all errors patent on the face of the record. We reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[4] and State v. Weiland.[5] The review reveals no errors patent in this case.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[2] State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
[3] State v. Gordon, 00-1013 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 142-143, citing State v. Husband, 437 So.2d 269, 271 (La. 1983); State v. Powell, 00-1729, p. 6 (La.App. 5 Cir. 3/14/01), 783 So.2d 478, 480-481.
[4] 312 So.2d 337 (La.1975).
[5] 556 So.2d 175 (La.App. 5 Cir.1990).