904 So.2d 838 (2005)
STATE of Louisiana
v.
Tracy BECNEL.
No. 04-KA-1266.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*843 Anthony G. Falterman, District Attorney, Donald D. Candell, Assistant District Attorney, Twenty-Third Judicial District, Parish of St. James, Convent, Louisiana, for Plaintiff/Appellee.
Peter John, Andrea Jones, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On January 18, 2001, defendant, Tracy Becnel, was charged by bill of information with one count of possession of cocaine with the intent to distribute in violation of R.S. 40:967(A) and one count of possession of a firearm by a person convicted of certain felonies in violation of R.S. 14:95.1. Defendant pled not guilty to these charges on February 6, 2001.[1] On March 19, 2001, defendant's motion for preliminary examination was heard, and the court found that there was probable cause for the charges. Thereafter, on June 18, 2001, defendant filed a motion to suppress evidence which was denied on September 20, 2001. On February 19, 2002, the trial court granted a motion to sever the charges.
On April 16, 2002, defendant was re-arraigned and pled not guilty and proceeded to trial by a jury on the possession of a firearm charge. The following day, a *844 twelve-person jury returned a unanimous guilty verdict. On April 19, 2002, defendant filed motions for new trial and post-verdict judgment of acquittal which were denied on August 18, 2003. Defendant was sentenced on September 19, 2003 to fifteen years of imprisonment with the Department of Corrections with credit for time served, with his sentence to run consecutive with any other sentence he was serving. Further, defendant was given a $1,000 fine. Defendant filed a motion to reconsider sentence on October 16, 2003, which was ultimately withdrawn, and defendant filed this appeal on January 20, 2004.
Thereafter, defendant informed the court that he would file a motion to reconsider the sentence. Another motion to reconsider sentence was filed on July 15, 2004. On September 20, 2004, the motion to reconsider sentence was heard and for written reasons, the court re-sentenced defendant to ten years with the Department of Corrections, this sentence to run concurrent with any other sentence he is serving, with credit for time served, including a period of home incarceration.

FACTS
On November 19, 2000 at approximately 5:30 p.m., St. James Parish Sheriff's Office Deputy Shawn F. Cook, Sr. was patrolling southbound on La. Hwy. 3127 near Vacherie when he noticed a dark vehicle traveling off the side of the roadway. Deputy Cook testified that it had just turned dark and this vehicle was traveling slowly on the unimproved section of the roadway without headlights. Deputy Cook proceeded further south, pulled into a small access driveway and waited for the vehicle to pass him. At this time, the vehicle became illuminated by Deputy Cook's headlights, and he observed what he believed to be a stock of the butt end of a long rifle or shotgun. According to Deputy Cook, this was easily identified because of his familiarity with firearms in his experience as a hunting certification instructor. He had previously received several complaints of improper hunting involving a vehicle matching this vehicle's description in the area from local landowners while he was a wildlife agent.[2] He testified that he believed a crime was committed or was about to be committed. Based on the totality of circumstances surrounding this vehicle, Deputy Cook decided to stop the vehicle.
Thereafter, Deputy Cook pulled onto the highway, called Deputy Ryan Donadieu for assistance to stop the suspicious vehicle because of the firearm, and made a turn onto another driveway, this time facing the vehicle. Noticing his assistance was approaching, he activated his unit's lights and then shined his spotlight on the vehicle. Deputy Donadieu testified that, as he approached, he saw the black Suzuki Samari traveling slowly with no lights on. Through the passenger window, Deputy Donadieu observed the stock of a rifle. The subject in the vehicle, later identified as defendant, proceeded on his own out of the vehicle. According to Deputies Cook and Donadieu, defendant was wearing hip-boots and full camouflage. Defendant put his hands in his pockets as he approached the officers. For safety reasons, Deputy Cook told him to remove his hands from his pockets, yet defendant again returned his hands to his pockets. Deputy Cook asked defendant what he was doing, and defendant stated that he was deer hunting. *845 Although defendant told the officers he did not have identification, identification was later recovered off of his person.
After being told several times to remove his hands from his pockets, defendant reached for something behind his back by his jacket and Deputy Donadieu grabbed his arm, fearing he might have a weapon, and advised him to keep his arms in plain sight. At this time, defendant attempted to hit Deputy Donadieu who avoided the strike. Officer Cook grabbed defendant and wrestled him down to the ditch. Once the struggle initiated, defendant was verbal and belligerent, threatening to kill them. Defendant was thereafter arrested and charged with battery of police officer, resisting arrest and assault.
After defendant was arrested, Deputy Donadieu searched the vehicle and found a loaded .22 rifle with a laser pen taped to it to be used as a sight and a loaded .357 revolver. According to Deputy Donadieu, the rifle's barrel was down and its stock was elevated, while it rested against the seat and the .357 was on the front seat on the passenger's side of the vehicle, sitting inside of its holster with its barrel partially covered by a white T-shirt rag.[3]
Lonnie Becnel, defendant's brother, testified that he and defendant had changed the motor and clutch in the jeep and that, on the date of defendant's arrest, he decided to use it to hunt. After having problems getting the jeep started, he testified that he caught a ride back to defendant's house around 3:00 p.m. Clarence Davontine brought him back to the jeep, but he could not get it started. Although he took a rifle from the jeep, he testified that he left a rifle and his .357 which was inside a closed bag in the vehicle. Further, he stated that he covered the rifle with a brown sack and laid it down between the seat and the shift on the floorboard passenger side.
Clarence Davontine, also known as "Gummie,"[4] testified that he was at defendant's house on November 19, 2000, and defendant was working on Shelly Octave's car while wearing sweatpants and a sweatshirt. He testified that he left with Lonnie between 3:00 and 3:45 to check on the jeep.[5] They brought a battery, but Lonnie could not get it started. Clarence testified that he dropped Lonnie off to hunt and returned to defendant's house. Later, he and defendant went to start the jeep at around 4:00 or 5:00. After raising the hood, defendant got the jeep started and waved him to go ahead. Defendant was driving on the cane road and, according to Clarence, could remain on this road and get home without getting on the highway. After going to defendant's house and waiting for him for ten to fifteen minutes, Clarence testified that he decided to go back to look for defendant and noticed the police with him. He testified that he left to find defendant's brother and they went back only for the officers to tell them to get away.
Shelly Octave testified that, on November 19, 2000, she went to defendant's to *846 pick up her car that defendant was working on. She testified that at this time defendant was wearing a jogging suit and Clarence was there talking to defendant about a battery and cables.[6] She was back at her house, which was about twelve minutes away, for 4:00 p.m.
Baronie Tragle testified that the gray and blue Suzuki Samari belonged to his oldest sister and he had use of it. He further stated when it had engine and clutch problems, he brought it to defendant, who is married to his other sister, to fix. He stated that he did not hunt at all, and that to his knowledge defendant did not either.
Lee Hymel testified that the .22 rifle belonged to him and that the laser was attached by him to sight in the rifle for accuracy in the woods, not for hunting purposes. He further testified that he was with Lonnie on November 17 and 18 and left the rifle with him.
Joann Robeau, an expert in the field of fingerprint analysis and identification, took defendant's fingerprint in court and compared it to fingerprints taken for previous convictions in 1993 and 1995 and others taken on November 20, 2000, the day after his arrest, and concluded that defendant was indeed the same person who pled guilty for the two prior convictions and who was arrested for this charge.
Sheriff Willy J. Martin, Jr., who was elected Sheriff of St. James Parish in 1991, testified that if defendant had made a request to carry a weapon it would have had to go through him. He testified that defendant has never made an official request for a permit to carry a weapon and that he has never granted permits for convicted felons to carry weapons.

ISSUES PRESENTED FOR REVIEW:

ISSUE ONE
Although not specifically listed as an assignment of error, defendant contends that the State failed to prove beyond a reasonable doubt the defendant's specific criminal intent to possess the firearms.

DISCUSSION
Defendant argues that he did not have the requisite intent to possess the firearms nor did he assert dominion and control over the firearms and should not have been convicted. Defendant further contends that his reasonable hypothesis of innocence that he was dropped off to service a vehicle was supported by evidence. The State responds that this issue is without merit and that the record reflects that defendant did possess the weapons.
The reviewing court should first determine sufficiency of evidence when issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors. When the entirety of the evidence, including evidence erroneously admitted, is insufficient to support the defendant's conviction, the defendant must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396. Therefore, defendant's sufficiency issue will be addressed first.
In reviewing the sufficiency of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all *847 of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tilley, 99-569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).
Under LSA-R.S. 15:438, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, this requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63. In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Id.
LSA-R.S. 14.95.1 makes it unlawful for any person who has been convicted of certain felonies, such as possession of cocaine, to possess a firearm. To sustain a conviction under LSA-R.S. 14:95.1, the following elements must be proved: 1) the status of defendant as a convicted felon; 2) possession by defendant; and 3) the instrumentality possessed was a firearm. State v. Crawford, 03-1494 (La.App. 5 Cir. 4/27/04), 873 So.2d 768, 784 (citing State v. Mose, 412 So.2d 584, 585 (La.1982); State v. Knight, 99-138 (La. App. 5 Cir. 6/30/99), 738 So.2d 1179, 1181). In addition, general intent is required to commit this crime. State v. Crawford, supra (citing State v. Wilder, 02-229 (La. App. 5 Cir. 6/26/02), 822 So.2d 844, 848, writ denied, 03-0405 (La.2/13/04), 867 So.2d 683). Further, the State must prove that ten years has not elapsed since the date of completion of the punishment for the prior felony conviction. State v. Crawford, supra (citing State v. Knight, 738 So.2d at 1181).
The first element was met through the expert testimony of Joann Robeau who took defendant's fingerprint in court and compared it to those from a 1993 and a 1995 conviction and concluded defendant was one in the same person who pled guilty to the two prior possession of cocaine charges. She likewise concluded the fingerprints matched those taken on November 20, 2000. Further, these convictions fell within the ten-year statutory limitation period in accordance with LSA-R.S. 14:95.1(C)(1).
The specific issue raised by defendant in the present case is whether the defendant had the requisite intent to possess the firearm either through actual possession or through constructive possession. The facts of each case determine whether the proof is sufficient to establish possession. State v. Johnson, 03-1228 (La.4/14/04), 870 So.2d 995, 998 (citing State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337, 338-339; State v. Bell, 566 So.2d 959, 960 (La.1990)). Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. State v. Johnson, supra (citations omitted). To satisfy the possession element of LSA-R.S. 14:95.1, actual possession of a firearm is not required; that is, constructive possession is sufficient. *848 State v. Storks, 02-754 (La.App. 5 Cir. 12/30/02), 836 So.2d 638, 640 (citing State v. Francis, 95-194 (La.App. 5 Cir. 11/28/95), 665 So.2d 596; State v. Webber, 99-23 (La.App. 5 Cir. 7/27/99), 742 So.2d 952, 955). Constructive possession of a thing exists when it is subject to a person's dominion and control. Id. Even if the person's dominion over the weapon is only temporary in nature and if control is shared, constructive possession exists. State v. Storks, supra (citations omitted). In addition, our jurisprudence has added an aspect of awareness to an offense of LSA-R.S. 14:95.1. State v. Storks, supra (citing State v. LaMothe, 97-1113 (La.App. 5 Cir. 6/30/98), 715 So.2d 708, writ granted in part, 98-2056 (La.11/25/98), 722 So.2d 987). As such, "the State must also prove that the offender was aware that a firearm was in his presence and that the offender had the general criminal intent to possess the weapon." State v. Storks, supra (citing State v. Webber, supra; State v. Blount, 01-844 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775).[7]
In State v. Storks, supra, this Court found that there was sufficient evidence to conclude that the defendant was aware of the gun and that it was under his dominion and control at the time the vehicle was stopped. In this case, the gun was visible to the defendant as it was sitting, in plain view, next to him and was within his reach and easily accessible. This Court found that such dominion and control was sufficient to constitute constructive possession.
In State v. Bonnet, 98-1014 (La.App. 5 Cir. 2/23/99), 731 So.2d 368, writ denied, 99-0822 (La.9/3/99), 747 So.2d 534, the defendant was convicted of possession of an unregistered firearm. The officer testified that the gun was in plain view and he was able to see the gun by looking through the window on the driver's side of the vehicle. This Court concluded that the jury could have concluded that the defendant was in constructive possession of the gun, because the gun was within the defendant's dominion and control. The defendant had previously been sitting in the vehicle's passenger seat. Id. at 374.
In the present case, the record reflects that defendant was a convicted felon who was in possession of a firearm. According to the Sheriff, defendant was not granted a permit to possess a firearm pursuant to LSA-R.S. 14:95.1(C)(2). Although there was no attempt to lift fingerprints off of the two weapons found in the vehicle, a jury could have believed defendant had at least constructive possession of the firearms. From the testimony of the officers, the firearms were in plain view in the vehicle in which defendant was the sole occupant. One firearm was resting on the seat, and the other was on the front seat about one foot away from the driver's hip. Deputy Donadieu stated that he observed through the vehicle's passenger window the stock of a rifle and Deputy Cook testified that he saw the stock of the rifle before stopping the vehicle. The jury could have believed this testimony and found it unreasonable that defendant did not have knowledge of the firearms which *849 were next to him in the vehicle. Regardless of the reason the firearms were in the vehicle defendant was driving, the firearms were within his dominion and control at the time he was stopped by the officers.[8]
Whether a defendant possessed the requisite intent in a criminal case is for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 317 (citation omitted). It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to reweigh the evidence. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Carter, 98-24 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444. "The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness." State v. Crawford, 873 So.2d at 786 (citation omitted). After hearing the trial testimony, the jury could have opted to accept the testimony of the State's witnesses and reject that of defense witnesses. According to the officers, the defendant originally said he was deer hunting; however, his defense was later that he was servicing the vehicle previously driven by his brother who was hunting. This change in defendant's explanation of the events could have caused the jury to disbelieve his stated hypothesis of innocence.
We find that the evidence was sufficient to conclude that defendant had the requisite intent to possess the firearm. After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the evidence was sufficient to support defendant's conviction.
This assignment of error is without merit

ASSIGNMENT OF ERROR NUMBER ONE
By his first assignment, defendant contends that the trial court erred in admitting a photograph into evidence that was never disclosed to the defense in pretrial discovery, and allowed it to be submitted to the jury and taken into the jury room.

DISCUSSION
Defendant argues he was prejudiced because the photograph should not have been admitted into evidence since it was never disclosed to him during discovery. He further argues that the photograph was material and relevant to the issue of guilt because it supported the testimony that defendant stated he was hunting, creating an inference that defendant had the general criminal intent to possess the firearms. Defendant further complains that this photograph was not included in the evidence locker and was admitted without proof of chain of custody, without the date of the picture and without the photographer present. Defendant further questions the accuracy of the photograph and notes that the person depicted in it is not identifiable. In addition, defendant contends the admission of this photograph was contrary to the weight of the evidence presented and should not have been admitted without the requisite foundation for authentication.
The State responds that the photograph was used on rebuttal after defendant *850 raised the issue as to what the defendant was wearing and was properly admitted.
Criminal discovery rules are intended to eliminate unwarranted prejudice which arises from surprise testimony and evidence in order to permit the defense to respond to the State's case and allow the defense to properly assess the strength of the State's case. State v. Williams, 03-942 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1010, writ denied, 04-0450 (La.6/25/04) 876 So.2d 832 (citations omitted). On motion of defendant, LSA-C.Cr.P. art. 718 provides for discovery of documents and tangible evidence within the State's possession, custody or control when the items sought are (1) favorable to the defendant and material and relevant to his guilt or punishment, (2) are intended for use by the State as evidence at trial, or (3) were obtained from or belong to the defendant. State v. Williams, supra (citation omitted). Discovery is not limited, however, to evidence contained in the district attorney's file. State v. Williams, supra (citing State v. Lee, 531 So.2d 254 (La.1988)).
The State has the right to rebut evidence adduced by defendant. LSA-C.E. art. 611(E). Rebuttal evidence is offered to explain, repel, counteract or disprove facts which are given in evidence by the adverse party. State v. Williams, supra (citing State v. Parent, 02-835 (La. App. 5 Cir. 12/30/02), 836 So.2d 494, 504, writ denied, 03-0491 (La.10/31/03), 857 So.2d 472). The trial court is vested with sound discretion in determining what constitutes valid and admissible rebuttal evidence. Id. "A trial court's ruling on the admissibility of rebuttal evidence will not be disturbed, except in extreme cases, such as when the evidence was kept back deliberately for the purpose of deceiving and obtaining an undue advantage." State v. Williams, supra (citing State v. Parent, 836 So.2d at 504-505).
LSA-C.Cr.P. art. 729.5(A) provides
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
A violation of the discovery procedures is only reversible when the defendant is prejudiced as a result of the discovery violation. State v. Zapata, 97-1230 (La. App. 5 Cir. 5/27/98), 713 So.2d 1152, 1162, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443.
In State v. Young, 37,673 (La.App. 2 Cir. 12/5/03), 862 So.2d 312, writ granted in part and denied in part, 04-0029 (La.5/14/04) 872 So.2d 505, the defendant argued that the trial court erred in admitting photographic evidence at trial which was taken of the defendant on the date of his arrest and not produced in discovery. The defendant complained that his objection to such evidence was erroneously overruled. The State argued that the photographs of the defendant were submitted in rebuttal to defense testimony that the officers could not have taken the crack cocaine from the defendant's shirt pocket because he was not wearing a shirt with a pocket on the day he was arrested. These photographs depicted the defendant on the day of his arrest wearing a shirt with a pocket. The Second Circuit found that this was rebuttal evidence used to disprove facts given by the defense and that the *851 defendant failed to prove the State intended to introduce the photographs to deceive the defense or obtain an unfair advantage.
In the present case, the State adduced the testimony of officers on rebuttal who had a personal photograph taken of the incident as a memento which was not part of the evidence submitted to the district attorney. This evidence was submitted as rebuttal evidence because defense witnesses had previously testified that defendant was wearing a sweat suit. The officers, however, recalled that defendant was in full camouflage and hipboots.
We find that the photograph which depicted the clothing of defendant at the time he was arrested was not intended for use at the trial and was offered to disprove the defense witnesses' testimony. Further, the photograph was not taken from defendant and was not favorable to him. We fail to find that the trial court abused its discretion in finding that the photograph was proper rebuttal evidence. Rather, as rebuttal evidence, the photograph was not subject to pretrial discovery. See, State v. Williams, 866 So.2d at 1011. There is no evidence that the State withheld the evidence deliberately for the purpose of deceiving or obtaining an undue advantage at trial. We further find that defendant was not prejudiced by the photograph. Other evidence was offered as to what defendant was wearing at the time of his arrest. The jury could have chosen to believe the officers' testimony as to the defendant's clothing at the time of his arrest, even without such a photograph. Further, according to the officers, defendant himself stated that he was deer hunting when he was stopped.
Likewise, we find that defendant's argument as to the State's failure to lay the proper foundation for authentication of the photograph is without merit. Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted. State v. Sterling, 95-673 (La. App. 5 Cir. 2/27/96), 670 So.2d 1316, 1319 (citing State v. Flowers, 509 So.2d 588 (La.App. 5 Cir.1987)). For admission of a photograph, the proper foundation is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it as such. Id. at 1319-1320. To be admissible, a photograph need not be identified by the person who took it. State v. Bates, 397 So.2d 1331, 1335 (La.1981) (citing State v. Robertson, 358 So.2d 931 (La.1978)); State v. Sterling, supra at 1320 (citations omitted). Further, "[a] defect in the chain of custody goes to the weight of the evidence rather than to its admissibility." State v. Frank, 549 So.2d at 405 (citing State v. Sam, 412 So.2d 1082 (La. 1982); State v. Williams, 447 So.2d 495 (La.App. 3 Cir.1984), writ denied, 450 So.2d 969 (La.1984)).
Sergeant Donadieu identified the photograph as taken of defendant in full camouflage the night of the arrest. Officer Cook was not called to testify regarding the photograph after the parties stipulated that he would state the same thing. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant next contends that the trial court erred in denying the motion to suppress because the rifle and the gun were obtained as a result of an unlawful investigatory stop.

DISCUSSION
Defendant argues that the deputy had no knowledge of facts and circumstances to justify an infringement on defendant's rights because at no time did he observe defendant commit a crime or attempt to commit a crime. He further asserts that *852 the deputy's suspicions were not reasonable, contending that the trial court abused its discretion in accepting Deputy Cook's testimony regarding the complaints of illegal night-hunting by landowners in the area. The State responds that the deputy making the stop had an articulable reasonable suspicion for inquiring into defendant's conduct and subsequently when defendant became belligerent and swung at Deputy Donadieu, he committed a crime and subjected himself to arrest. Thereafter, the deputies were within their rights to recover weapons based upon an inventory search or search incident to arrest.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585.
Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense' and to demand that the person identify himself and explain his actions." State v. Melancon, 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297.
The "reasonable suspicion" necessary for an investigatory stop "is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference." State v. Melancon, supra. Without reasonable suspicion, an investigatory stop is illegal and the evidence seized from that stop is suppressible. State v. Triche, 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 84, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). "The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression." State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159 (citation omitted). To determine whether the trial court's denial of the motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial. State v. Butler, 01-0907 (La. App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
Police officers have the authority to stop someone in a public place if they reasonably suspect that person is about to commit an offense. State v. Jackson, 02-146 (La.App. 5 Cir. 5/29/02), 820 So.2d 1147, 1151 (citing LSA-C.Cr.P. art. 215.1). However, the officer must be able to articulate specific facts upon which his suspicion is based. State v. Collins, 04-751 *853 (La.App. 5 Cir. 11/30/04), 890 So.2d 616, 618 (citing State v. Kang, 01-1262, p. 4 (La.App. 5 Cir. 2/23/04), 866 So.2d 408, 412, writ denied, 04-0944 (La.11/24/04), 888 So.2d 226). As stated in State v. Collins, supra,
A reviewing court must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."
Id. at 618-619 (citations omitted).
Officer Cook testified that, at approximately 5:30 p.m., as it was approaching darkness, he observed a dark vehicle heading southbound on the right-of-way, driving slowly without any lights on, at a time when other vehicles were displaying headlights. The vehicle was not displaying a license plate. After the officer's lights illuminated on the vehicle as it passed, he was able to observe the stock of a rifle or a shotgun. This vehicle matched the description of the vehicle he had received numerous complaints about from landowners and farmers concerning a black jeep that had been hunting for deer at night. The officer based his suspicions on his previous experience as a Wildlife Enforcement Agent with the Louisiana State Wildlife Fisheries Enforcement Division. From the totality of all of these circumstances, the officer stopped the vehicle, suspecting him of illegal hunting activities.[9] When asked what defendant was doing, he stated that he was deer hunting.
After defendant was arrested, Deputy Donadieu searched the vehicle. Unless justified under a narrowly drawn exception to the Fourth Amendment's warrant requirement, a warrantless search is per se unreasonable; in addition, the State bears the burden of proving such an exception applies. State v. Bergman, 04-435 (La.App. 5 Cir. 10/12/04), 887 So.2d 127, 129 (citing State v. Freeman, 97-1115 (La. App. 5 Cir. 12/29/98), 727 So.2d 630, 634). A search incident to a lawful arrest is one exception to the warrant requirement. State v. Bergman, supra (citing Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Joseph, 02-717 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1051). To remove weapons from his person and prevent evidence from being destroyed, a warrantless search of the arrestee's person and of the area within his immediate control is permitted after a lawful arrest has been made. State v. Bergman, 887 So.2d at 129-130. The police may search the passenger compartment of an automobile as a search incident to the arrest when the automobile's occupant is arrested. Id. at 130 (citations omitted). This exception applies whether the individual remains in the vehicle or is removed by the police. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 2131, 158 L.Ed.2d 904 (2004).
In the present case, defendant was lawfully arrested after taking a swing at a police officer. Thereafter, the officer had the authority to search the vehicle. In State v. Freeman, 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634-635, this Court found that, even though the defendant was secured in the police car, a search of the automobile which resulted in the seizure of cocaine was a valid search *854 incident to the defendant's arrest. Further, in the present case, the officer that seized the firearms testified that the firearms were found in plain view. "The Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view." State v. Freeman, 727 So.2d at 634 n. 1 (citing Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Meichel, 290 So.2d 878 (La.1974)).[10]
Based on the foregoing, we find that the investigators had reasonable suspicion to justify an investigatory stop and the evidence discovered in the search of the vehicle incident to the arrest was properly seized.
This assignment of error is without merit.

ADDITIONAL ISSUES PRESENTED FOR REVIEW:

ISSUE TWO
The trial court erred in overruling the defense objection to Joann Robeau, a fingerprint analyst for the Sheriff's [O]ffice, as an expert in fingerprint analysis.

DISCUSSION
Defendant argues that Joann Robeau was certified as an expert in fingerprint analysis and identification without any test of competency.[11] He further contends that the trial court abused its discretion in accepting her as an expert after she was unable to provide significant information that would insure the validity of the method used to compare the fingerprints taken in this case to others. The State responds that this assignment of error is without merit and recognizes that the trial court's determination of whether an individual is qualified as an expert is entitled to great weight.
As stated in State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 314,
The purpose of an expert witness, particularly in criminal cases, is to provide jurors with a basic knowledge and background on a subject, while the jury retains its ultimate role as fact finder. The jurors relate background knowledge from the expert to facts established by the evidence and make a determination as to defendant's guilt.
Id. (citing State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1080, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055). In determining the competence of an expert witness, the trial court has wide discretion, and its ruling will not be set aside absent manifest abuse of discretion. State v. Tran, supra (citations omitted). Appellate courts will consider whether a witness has previously been qualified as an expert when reviewing the decision of the trial court to qualify a witness as an expert. State v. Torregano, 03-1335 (La.App. 5 Cir. 5/11/04), 875 So.2d 842, 847 (citing State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997)).
The record reflects sufficient support of the trial court's finding that Joann Robeau is an expert in the field of fingerprint analysis and identification. She has been *855 employed by the Louisiana State Police as a fingerprint technician supervisor since 1988. She has trained new hires on fingerprint analysis for over twenty-five years. In a day, it is possible for her to look at hundreds to thousands of fingerprints. In addition to six months of intense on-the-job training, in 1988, she attended schooling taught by the FBI at Louisiana State University. Finally, she has previously testified in court under similar circumstances as a qualified expert in fingerprint analysis in various Louisiana courts, including the parishes of Avoyolles, Ascension, East and West Baton Rouge, East and West Feliciana and Livingston. She has never been tendered as an expert and rejected by a court. Based on Joann Robeau's training and experience, we conclude that the trial court did not abuse its discretion in finding her to be an expert.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). Our review revealed no errors which require corrective action by this court.

CONCLUSION
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Tracy Becnel, are affirmed.
AFFIRMED
NOTES
[1] It is noted that the possession of cocaine with intent to distribute charge was amended to R.S. 40:967(C) on March 15, 2004. On this date, defendant pled guilty to this amended charge and was sentenced to twenty-two months with the Department of Corrections to run concurrent with any time presently serving, with credit for time served.
[2] Deputy Cook testified that prior to his employment with the Sheriff's Office, he was employed as a wildlife agent by the State in the same general vicinity. Specifically, as a wildlife agent, Deputy Cook received complaints that the defendant, in this vehicle, was night hunting in the area.
[3] Officer Janee Hales, evidence custodian of the St. James Parish Sheriff's Office, testified that the log of evidence showed that Deputy Donadieu collected a .22 caliber Marlin rifle with a laser attached and a bullet on November 29, 2001 at 5:43 p.m. and a .357 magnum Ruger with bullets and a holster at 6:17 p.m.
[4] It is noted that "Gummie" is sometimes spelled "Gummy" in the record.
[5] Clarence testified that Lonnie did not call; however, the State used the September 17, 2001 transcript from the motion to suppress hearing to impeach this testimony since he had originally stated that defendant received a call from his brother that the jeep stopped on him.
[6] Although Clarence and Shelly testified that defendant was wearing a sweat suit on the date of his arrest, the State called Sergeant Ryan Donadieu as a rebuttal witness and he identified a photograph taken of defendant after the arrest in camouflage.
[7] According to LSA-R.S. 14:10,

(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
[8] It is noted that the reason for possessing a firearm is irrelevant to the offense of possession of a firearm by a convicted felon since the law does not require that the convicted felon possess the firearm with the intent to use it in an illegal manner.
[9] The officer testified that it is illegal in Louisiana to hunt deer from a moving vehicle and to hunt deer in the dark.
[10] Finally, another exception to the warrant requirement is the automobile exception, "which has traditionally been based on the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant." State v. Freeman, 727 So.2d at 635 (citations omitted).
[11] Defendant cites LSA-R.S. 15:466 regarding the test of competency of an expert; however, it is noted that this statute was repealed by Acts 1988, No. 515, § 8, effective January 1, 1989.