890 So.2d 616 (2004)
STATE of Louisiana
v.
Leo C. COLLINS.
No. 04-KA-751.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*617 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
William R. Campbell, Jr., New Orleans, Louisiana, for Defendant/Appellant.
*618 Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, Leo Collins, pled guilty to one count of possession of a handgun while in possession of a controlled dangerous substance (cocaine), LSA-R.S. 14:95E; and one count of possession of a controlled dangerous substance (cocaine) within 1000 feet of a church, LSA-R.S. 40:981.3, reserving his right to appeal the trial court's rulings on his motions to suppress the evidence. State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to five years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals.
The facts surrounding defendant's arrest are found in the testimony given at the trial court's suppression hearing. Deputy Sean Cursain of the Jefferson Parish Sheriff's Office testified that, on January 10, 2004, he and Deputy John Mehrtens were on patrol in the vicinity of the Villa D'Ames Apartments in Marrero. The officers rode in the same vehicle, with Cursain at the wheel.
Mehrtens testified that he and Cursain pulled into a parking lot in the apartment complex. The officers saw defendant there. Cursain testified that defendant looked at him and his partner, and then touched his left side. Mehrtens said he did not see a weapon, but based on experience he believed defendant was checking on a concealed weapon.
The officers exited their car. According to Mehrtens, defendant saw the officers and reached under his shirt as if reaching for a weapon. The officers drew their guns and ordered defendant several times to show them his hands. After some delay, defendant dropped a handgun on the ground. Mehrtens retrieved the weapon while Cursain restrained defendant.
Cursain testified that he advised defendant of his Miranda[1] rights, and placed him under arrest for carrying a concealed weapon. In a search incident to arrest, Cursain recovered three rocks of crack cocaine from defendant's pocket. Mehrtens testified that the scene of the arrest was across the street from a school and a church.
In this appeal, defendant argues that the trial court erred in denying his motion to suppress the evidence, as the officers' stop was not supported by reasonable suspicion that a crime had been or was about to be committed.
Although La.C.Cr.P. art. 215.1 permits a police officer to stop a citizen in a public place and question him, such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, a criminal offense. State v. Temple, 02-1895, p. 4 (La.9/9/03), 854 So.2d 856, 860; State v. Davis, 02-1008, p. 5 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, 958, writ denied, 03-0948 (La.11/7/03), 857 So.2d 516. The officer "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity....'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Moreover, the officer must be able to articulate specific facts upon which his suspicion is based. State v. Kang, 01-1262, p. 4 (La.App. 5 Cir. 2/23/04), 866 So.2d 408, 412.
A reviewing court

*619 must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."
United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-751, 151 L.Ed.2d 740 (2002) (quoting United States v. Cortez, supra). See also, State v. Sylvester, 01-0607, p. 5 (La.9/20/02), 826 So.2d 1106, 1109. In evaluating the "totality of the circumstances," evasive conduct in response to police presence in a high crime area is accorded significant weight. State v. Huntley, 97-0965, p. 4 (La.3/13/98), 708 So.2d 1048, 1050; State v. London, 01-1016, p. 5 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 164, writ denied, 02-1567 (La.5/30/03), 845 So.2d 1067. Similarly, the reputation of the neighborhood as a high crime area is an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop. London, supra.
In the instant case, Deputy Mehrtens testified that his division, as well as the narcotics division of the sheriff's office, received frequent complaints about crime in the vicinity of the Villa D'Ames Apartments. The officers, therefore, knew the neighborhood to be a high crime area. While on patrol in a vehicle, the officers happened upon defendant. When the officers initially saw him, he was walking across a parking lot. The time was 9:36 p.m., but the area was illuminated by nearby streetlights. The officers did not initially take any action. Nevertheless, when defendant saw them, he began walking between vehicles in the parking lot, turning his back toward them. Defendant tapped his left side with his hand. This caused Cursain to suspect that defendant was concealing some type of contraband. At trial, Cursain explained that, in his experience, it is an almost involuntary action for a person carrying contraband to touch the spot where it is hidden.
Mehrtens testified that he did not see a gun at that point, but to him defendant's movement indicated he was checking on a weapon. Mehrtens termed the motion a "security check."
Cursain testified that he and Mehrtens exited their vehicle without drawing their weapons. Cursain said it was his intention to question defendant and ask him what he was doing there. Defendant responded to the officers' approach by adopting a defensive posture, which the officers characterized as "blading." Mehrtens testified that defendant reached under his shirt, an action he knew to be "consistent with people who have firearms...." Believing defendant to be armed, the officers drew their weapons and ordered him to show them his hands. The officers repeated the order several times before defendant dropped a gun on the ground.
Defendant argues that his behavior up to the time of the stop did not supply the officers with reasonable suspicion, because he did not act nervous, he did not attempt to flee, and the officers did not see him engaging in drug activity. On the contrary, the articulable facts were sufficient to justify a stop.
Defendant was in a neighborhood known to the officers as a high crime area. Once defendant saw the officers, he began to exhibit furtive and evasive behavior, thereby raising the officers' suspicions. Based on their experience, the officers interpreted defendant's movements as a sign that *620 he was concealing a weapon or other contraband. Cursain testified that, although he did not see defendant committing a crime, he believed defendant might have been committing a crime.
The officers did not affect an investigatory stop simply by exiting their car.[2] At that point they had not asserted authority over defendant. It was not until they drew their weapons that they stopped defendant for purposes of Article 215.1. At that point they reasonably believed a valid stop was necessary for their safety. Defendant's actions in "blading" and reaching for something under his shirt were sufficient to provide reasonable suspicion.
We find that the trial judge did not err in denying defendant's motion to suppress the evidence.
We have reviewed the record for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following errors.
The commitment reflects that the trial court imposed concurrent sentences of five years on counts one and two, while the transcript shows that the court imposed only one sentence for both counts. Generally, where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Ordinarily, the trial court must impose a separate sentence for each count on which a defendant is convicted. State v. Hebert, 02-1252, p. 9 (La.App. 5 Cir. 4/8/03), 846 So.2d 60, 65-66. However, there is an exception to the general rule where the offenses are based on a common scheme or plan, State v. Hebert, supra., based on La.C.Cr.P. art. 883, which provides that sentences for two or more convictions based on the same act or transaction are to be served concurrently, unless the trial court expressly directs that they be served consecutively. In this case, the motion hearing testimony shows that defendant's two convictions were based on a single incident, and it is apparent that the judge intended that defendant serve concurrent sentences. Thus, we need not take corrective action.
We also note that the sentence imposed is illegally lenient, as it does not include the fines required by statute. La R.S. 14:95(E); La. R.S. 40:981.3(E). Neither the state nor defendant has complained of the illegal sentence. We elect not to disturb defendant's sentences, based on the Louisiana Supreme Court's edict in State v. Campbell, 01-0329 (La.11/2/01), 799 So.2d 1136 (per curiam): "The appellate court should refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint and which resulted in dispositions of the case favorable to the defendant." See, State v. Massey, 02-872, p. 7 (La.App. 5 Cir. 2/11/03), 841 So.2d 862, 865, writ denied, 03-0805 (La.10/17/03), 855 So.2d 758.
For the above discussed reasons, defendant's convictions and sentence are affirmed.
AFFIRMED
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] See, State v. Jackson, 00-3083, p. 3 (La.3/15/02), 824 So.2d 1124, 1126 (per curiam) (citations omitted):

Because a police officer possesses the same right as any citizen to approach an individual and ask a few questions, ....the police do not seize a person merely by standing approximately 10 feet away and identifying themselves without taking any additional measures to assert their authority over the person that he or she would not expect from the encounter if it had occurred with an ordinary citizen....