CLARENCE E. McMANUS, Judge.
 

 |
 
 STATEMENT OF THE CASE
 

 The Jefferson Parish Sheriffs Office charged defendant, Jermaine Welch, in a bill of information with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1, aggravated criminal damage in violation of LSA-R.S. 14:55, and aggravated battery in violation of LSA-R.S. 14:34.
 

 On March 1, 2007, Detective David Spera with the Jefferson Parish Sheriffs Office was assigned to conduct a follow-up investigation of a February 25, 2007, shooting. Defendant, who had been arrested on February 27, 2007 in connection with the shooting, was being held at the Jefferson Parish Correctional Center (JPCC). Detective Spera’s investigation involved interviewing defendant. Detective Spera met with defendant at the JPCC and, according to Detective Spera, defendant agreed to accompany him to the Detective Bureau. Once at the Detective Bureau, defendant gave a taped statement implicating himself in the February 25, 2007, shooting. He explained he went to confront his estranged wife | sabout seeing her kiss another man. As he was waiting to talk to his estranged wife, a car passed and defendant grabbed a gun and “went to shooting.”
 

 Defendant initially pled not guilty and filed several pre-trial motions, including a motion to suppress his statement. The trial court denied his motion to suppress his statement after a hearing. Defendant later withdrew his not guilty plea and entered a plea of guilty under
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 
 [1]
 

 
 *296
 
 In accordance with the plea agreement, the trial court sentenced defendant to ten years in the Department of Corrections without the benefit of parole, probation or suspension of sentence for his felon in possession of a firearm conviction and ten years for his aggravated criminal damage to property and aggravated battery convictions. The sentences were ordered to run concurrently with each other.
 

 Defendant obtained an out-of-time appeal and now challenges the denial of his motion to suppress.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 In his first assignment of error, defendant argues the trial court erred in denying his motion to suppress his statement because the State failed to prove he knowingly and voluntarily gave the statement. He claims he did not understand his rights and that the statement was coerced. He further contends the trial court erred in finding he was advised of his rights five to six times before giving his statement. Defendant maintains he was only advised of his rights after he was transported from the jail to the detective bureau and asserts the transport alone was coercive.
 

 The State responds that defendant, who had completed the 12th grade, had a prior conviction, to which he pled guilty, and was fully aware of and understood his rights when he gave his statement. The State also argues the trial court made a | credibility determination and believed Detective Spera’s testimony over defendant’s testimony regarding the issue of the coercive nature of the statement.
 

 Before an inculpatory statement, made during a custodial interrogation, may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his
 
 Miranda
 

 [2]
 

 rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451;
 
 State v. Scott,
 
 06-134, p. 10 (La.App. 5 Cir. 7/25/06), 939 So.2d 462, 469,
 
 writ denied,
 
 06-2133 (La.3/30/07), 953 So.2d 61. A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.
 
 Id.
 

 Prior to pleading guilty, defendant filed a generic motion to suppress his statement on the basis it was obtained in violation of his constitutional rights. At the conclusion of the suppression hearing, defendant argued that the stress of being arrested and the actions of Detective Spera made him feel he had lost the power of choice and felt like he had to cooperate. He contended his rights were not explained to him and he gave his statement without understanding his rights. The trial court denied the motion to suppress finding defendant was well-advised of his rights and that his statement was voluntary.
 

 At the motion to suppress hearing, Detective Spera testified that he met with defendant at the JPCC as part of his follow-up investigation to a shooting. He stated defendant agreed to accompany him to the detective bureau to give a J^statement. Once at the detective bureau, Detective Spera presented defendant with
 
 *297
 
 a rights of arrestee or suspect form, which indicated defendant was under investigation for attempted second degree murder.
 

 Detective Spera testified he read the rights on the form to defendant and that defendant initialed next to each right and then signed the waiver of rights at the bottom of the form. The form shows defendant had a 12th grade education and agreed to waive his rights and give a statement. In signing the form, defendant indicated no promises or threats had been made to him and no pressure or coercion of any kind had been used against him.
 

 Detective Spera testified that defendant gave a statement after executing the form. The transcript of the statement shows Detective Spera reviewed defendant’s execution of the rights form and confirmed defendant understood his rights as stated on the form prior to taking his statement. Based on defendant’s education background, which was a 12th grade education, Detective Spera testified he had no reason to feel defendant had any difficulty understanding him. He explained he asks a suspect if they can read and write and then takes the suspect’s word for it. In the present case, Detective Spera assumed defendant truthfully answered him that he could read and write based on his educational level.
 

 Detective Spera further testified he did not force or coerce defendant to give a statement. He explained defendant was very cooperative and was not agitated or fidgety during the interview. Detective Spera specifically noted that defendant exhibited no signs of sleep deprivation. He stated defendant neither fell asleep during his statement nor did he require his arms to rest his head upon. He explained defendant sat upright in his chair and answered questions in a normal and clear voice.
 

 | (iDefendant testified he was exhausted at the time of his statement. He approximated he had only received six hours of sleep from the time of his arrest on February 27th until he gave his statement on March 1st. He also stated he felt he had no choice but to accompany Detective Spera to the detective bureau and give a statement. Defendant explained Detective Spera came to JPCC and told him he needed to come to the detective bureau to give his side of the story.
 

 Defendant stated that once he was at the detective bureau, he was told to sign and initial a form. He testified that he did not read it and explained that he could not read at all. He stated he was in a special education class in school and had difficulty reading and writing. He explained he graduated from high school with a certificate of achievement, not a diploma. Defendant further stated he did not really know what a waiver meant and felt he did not understand his rights. He claimed he did not know he had a right to a lawyer during the interview.
 

 Defendant also claimed he felt threatened by Detective Spera’s pre-statement physical gesture of punching a closed fist on the inside of his hand. Defendant testified he felt Detective Spera was trying to infer he would use force against defendant to get what he wanted. As a result, defendant stated he cooperated so he would not be beaten by the police. On rebuttal, Detective Spera denied any threats were made towards defendant and specifically denied he made a fist in the hand gesture.
 

 On appeal, defendant claims his statement was not knowing and voluntary on the basis that (1) he did not understand his rights because he could not read despite having a 12th grade education, and (2) he felt coerced by the transport between the jail and the detective bureau and Detective Spera’s alleged physical gesture.
 

 
 *298
 
 |7The record shows defendant had a 12th grade education. At no time prior to giving his statement did defendant indicate to Detective Spera that he could not read or that he did not understand his rights. Detective Spera testified that before defendant executed the waiver of rights form, he read defendant the rights on the form. Detective Spera stated that there was no question in his mind that defendant understood his rights. At the beginning of the taped statement, Detective Spera asked defendant if he read over the rights form and if he understood everything that was on the form. Defendant replied affirmatively to both questions.
 

 Additionally, at the suppression hearing, defendant specifically admitted Detective Spera reviewed his rights at the beginning of his taped statement. Furthermore, defendant had a prior conviction to which he pled guilty evidencing his familiarity with the judicial process and his knowledge of his rights.
 
 See State v. Stewart,
 
 37,841, p. 8 (La.App. 2 Cir. 12/12/03), 862 So.2d 1100, 1105,
 
 writ denied,
 
 04-234 (La.6/4/04), 876 So.2d 74.
 

 Although defendant is correct in asserting there was no evidence in the record that he had been advised of his rights five or six times before coming in contact with Detective Spera as the trial court noted, the record does show that defendant was advised of his rights at least twice before giving his statement and indicated he understood his rights on both occasions.
 

 Defendant’s claim that he felt coerced into giving the statement because he was transported from the jail to the detective bureau does not allege any specific police misconduct. Defendant testified he felt he had no choice but to go with Detective Spera to the detective bureau; however, he never claimed any threats were made against him. He did state Detective Spera left the room at the jail for five to ten minutes and he was left alone with Officer Jones. According to defendant, he told Officer Jones he did not do anything, but Officer Jones | ^repeatedly told him that he did not believe defendant and that defendant needed to tell him something about the incident. Defendant testified he felt if he did not accompany the officers to the detective bureau, they would keep coming back to the jail to get him.
 

 On appeal, defendant does not offer any authority to support his contention that being transported from the jail to the detective bureau amounts to coercion. Detective Spera testified he told defendant that he was investigating the shooting for which defendant was under arrest. He told defendant he would be happy to listen to his version of the events if defendant “wanted to come back to the Detective Bureau and give ... a statement.” Detective Spera denied telling defendant he had to come to the bureau and stated defendant agreed to go to the bureau. Defendant never rebutted Detective Spera’s version of what happened. Defendant simply claimed he felt he could not refuse. The simple act of asking a defendant to accompany an officer to the detective bureau in the event the defendant wishes to give a statement does not rise to the level of coercion that vitiates the voluntariness of a confession. Furthermore, once at the detective bureau and before giving his statement, defendant signed a form that specifically stated no threats, pressure or coercion of any kind had been used against him.
 

 Defendant also claimed he felt coerced into giving a statement because of Detective Spera’s threatening physical gesture. When an accused alleges a specific instance of police misconduct in reference to a confession, the State must specifically rebut the allegation.
 
 State v. Broadway,
 
 96-2659, p. 22 (La.10/19/99),
 
 *299
 
 753 So.2d 801, 817,
 
 cert. denied,
 
 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). To rebut defendant’s allegation, the State presented the testimony of Detective Spera, who specifically denied that he ever made a fist in hand gesture. The trial judge, who was faced with contradictory testimony which calls for a | ^determination of the credibility of the witnesses, obviously disbelieved the version presented by defendant and found Detective Spera’s testimony credible. Such credibility determinations lie within the sound discretion of the trial judge and his ruling will not be disturbed unless clearly contrary to the evidence.
 
 Id.
 
 at 23, 753 So.2d at 817.
 

 In
 
 Broadway, supra,
 
 the defendant claimed his confession was coerced and testified about physical abuse and threats by various police officers that occurred during his interrogation. The State presented the testimony of all the officers involved in the transportation and interrogation of the defendant who all denied defendant was ever threatened, intimidated, coerced, or verbally or physically abused. The Louisiana Supreme Court found the trial court made a credibility determination that was supported by the record.
 

 In this case, regarding defendant’s testimony that he was sleep deprived at the time of his statement, Detective Spera testified defendant did not show any signs of sleep deprivation and the record shows defendant never requested sleep prior to or during his statement. Furthermore, nothing in the record shows defendant was promised sleep in exchange for his confession.
 

 In
 
 State v. Franklin,
 
 03-287, pp. 3-8 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70-72,
 
 writ denied,
 
 03-3062 (La.3/12/04), 869 So.2d 817, defendant claimed he was coerced into giving statements because he was deprived of sleep. This Court found defendant’s confession was voluntary and noted that defendant never requested sleep during the entire interrogation process and there was no evidence he was sleepy at the time he gave his statements. This Court also noted defendant was never promised sleep in exchange for his confession.
 

 Additionally, in
 
 State v. Broadway,
 
 440 So.2d 828, 831-32 (La.App. 2 Cir.1983), defendants claimed their confessions were made under duress because they | inhad not slept or eaten since the day before giving their confessions. The Second Circuit found that the lack of sleep and food was attributed to the defendants’ own voluntary actions and not the actions of law enforcement officers and, therefore, could not be used to invalidate the confessions.
 

 In the present case, defendant testified he was unable to sleep or eat after he was arrested and placed in jail. In fact, he stated he could not sleep since the incident. Thus, we find defendant’s lack of sleep was not attributable to the actions of Detective Spera or other law enforcement officers.
 

 We further find the record sufficiently demonstrates defendant’s statement was knowing and voluntary. The testimony of both Detective Spera and defendant show defendant was advised of his rights. Detective Spera felt defendant understood his rights based on defendant’s education level and defendant specifically stated he understood his rights prior to giving his statement. At no time prior to or during his statement did defendant indicate he could not read and did not understand his rights, as presented on and read to him from the rights form.
 

 Additionally, we find the mere fact that defendant “felt” he could not refuse Detective Spera’s request that he accompany
 
 *300
 
 him back to the detective bureau to give a statement does not render defendant’s statement involuntary. Defendant never claimed he was threatened if he did not go to the detective bureau and there was no evidence of any type of coercion. Furthermore, the trial court made a credibility determination, which is supported by the record, that Detective Spera did not use a threatening physical gesture in obtaining defendant’s statement. Accordingly, we agree with the trial court and find defendant’s statement was voluntary and find the trial court correctly denied defendant’s motion to suppress the statement.
 

 11,ASSIGNMENT OF ERROR NUMBER TWO
 

 As his assignment of error number two, defendant requests an error patent review, but does not brief the matter. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request. Therefore, we will address the following matters.
 

 First, it is unclear whether the trial court imposed separate sentences for each count. Specifically, the commitment indicates, “[t]he Defendant is sentenced to ten years on counts one, two, three concurrently,” and the sentencing transcript reflects the following:
 

 On the Convicted Felon with a Weapon, the Court is going to sentence you to ten (10) years in the custody of the Department of Corrections without benefit of probation, parole or suspension of sentence.
 

 On Aggravated Criminal Damage to Property and Aggravated Battery, the Court is going to sentence you to ten (10) years in the custody of the Department of Corrections.
 

 All counts run concurrent with each other giving you credit for time served.
 

 Ordinarily, the trial court must impose a separate sentence for each count on which a defendant is convicted.
 
 State v. Collins,
 
 04-751, p. 6 (La.App. 5 Cir. 11/30/04), 890 So.2d 616, 620. The failure of the trial court to impose a sentence for each count is considered an error patent, but an exception exists.
 
 State v. Hebert,
 
 02-1252, p. 9 (La.App. 5 Cir. 4/8/03), 846 So.2d 60, 66. When the sentences for a conviction on each count would more appropriately be concurrent rather than consecutive, and the term of the imprisonment is reasonable under the circumstances, the single sentence will not affect the substantial rights of the defendant and remand for clarification or resentencing is not necessary.
 
 Id.
 

 |12LSA-C.Cr.P. art. 883 provides that sentences for two or more convictions based on the same act or transaction are to be served concurrently, unless the trial court expressly directs they be served consecutively. In the present case, all three of defendant’s convictions were based on a single incident. Additionally, the trial court ordered all of defendant’s convictions to be served concurrently in accordance with the plea agreement. Thus, we find no need to remand the matter for clarification or resentencing.
 
 See State v. Hebert, supra, and State v. Collins, supra.
 

 Second, we note defendant received an illegally lenient sentence on count one because the trial court failed to impose a mandatory fine under LSA-R.S. 14:95.1, which requires a fine between $1,000 and $5,000. This Court has the authority to correct an illegally lenient sentence. LSA-C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. When a defendant is sen
 
 *301
 
 tenced pursuant to a guilty plea, this Court has withheld from correcting an illegally lenient sentence, recognizing that the appellate court should refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint, and which resulted in disposition of the case favorable to defendant.
 
 State v. Grant,
 
 04-341, pp. 4-5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Therefore, since defendant’s sentence in this case resulted from a guilty plea, we refrain from exercising our authority to correct defendant’s illegally lenient sentence. Accordingly, defendant’s sentence is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Although neither the minute entry nor the guilty plea transcript shows defendant pled guilty under
 
 Crosby,
 
 the waiver of constitutional rights and plea of guilty form specifically shows defendant understood he retained the right to appeal the ruling on his motion to suppress under
 
 Crosby.
 

 [2]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).