ROBERT M. MURPHY, Judge.
12Pefendant, Daylan Bradstreet, appeals his conviction for possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. For the reasons that follow, we affirm.

STATEMENT OF THE CASE

On March 19, 2013, the Jefferson Parish District Attorney charged defendant, Daylan Bradstreet, with one count of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. After entering a not guilty plea to the charged offense, defendant filed several pretrial motions, including a motion to suppress evidence that was denied on May 1, 2014. On May 20, 2014, a twelve-person jury found defendant guilty as charged. Following the denial of his motion for new trial and, alternatively, to arrest the judgment, defendant was sentenced to 15 years imprisonment at hard labor to be served without benefit of parole, probation, or suspension of sentence. Immediately following sentencing, | odefendant’s written motion to reconsider sentence, filed on May 27, 2014, was denied. On May 27, 2014, defendant also filed a motion for appeal, which was granted by the trial court on May 28, 2014.[1] This appeal follows.

FACTS

On February 20, 2013, at approximately 1:00 p.m., Detective William Whittington and Detective John Wiebelt of the Jefferson Parish Sheriffs Office were on proactive patrol[2] in the 3700 block of the West- *310 bank Expressway, in Harvey. Detective Whittington testified that the area they were patrolling is known for “drugs, guns, [and] stolen cars.” While traveling eastbound on the lower level of the expressway in their unmarked, yet recognizable, police unit — equipped with a spotlight on the driver’s side door — the officers observed defendant and another individual walking along the expressway near a Burger King. Upon noticing the officers, defendant “warned his friend” of their presence, who then looked back to observe the officers. The duo watched the officers to keep track of their location while “looking around,” which in Detective Wiebelt’s experience he believed was indicative of “someone looking for an avenue of escape or someone who’s going to flee.” Believing their behavior to be suspicious, the officers made a U-turn into the parking lot of a Motel 6, prompting defendant and his companion to “quickly change directions.” The two men then entered Perino’s Boiling Pot restaurant.
Later, upon seeing defendant’s companion exit Perino’s by himself, the officers got out of their vehicle to investigate and questioned him as to defendant’s Lwhereabouts. Defendant’s companion claimed to be alone, which the officers knew to be untrue based on their previous observation. Detective Wiebelt then proceeded inside Perino’s, where defendant was located near the front door. Detective Wiebelt identified himself to defendant as a law enforcement officer[3] and asked defendant to step outside. Because defendant began to “look around” and “tensed his body,” Detective Wiebelt grabbed him by the arm and escorted him outside. According to Detective Wiebelt, defendant continued to resist him and became combative. Ultimately, defendant was arrested for resisting an officer and being a felon in possession of a firearm.
When Detective Whittington attempted to approach defendant’s companion to ask him additional questions about defendant, he began to “backpedal.” Detective Whit-tington then tried to grab him and a minor struggle ensued. After restraining the companion, Detective Whittington testified that he heard Detective Wiebelt give “loud verbal commands” to defendant to “stop resisting.” - Backup officers arrived on the scene shortly after defendant had been subdued.
Defendant was placed under arrest and advised of his Miranda[4] rights. He was then escorted to the police unit where backup officer, Detective Steven Brens, conducted a pat-down search of defendant’s person for weapons. It was at that time that a handgun fell out of defendant’s pants onto the ground.

ASSIGNMENT OF ERROR NUMBER ONE

The trial court abused its discretion by not suppressing the evidence (gun) as the result of an unreasonable stop by police officers.

DISCUSSION

In his sole assignment of error, defendant argues his motion to suppress should *311 have been granted because the stop and seizure were not based on treasonable suspicion, but on the mere fact that he and his companion entered a restaurant to wait and see what the “people in the car” following them “were up to.” Also, he asserts that the denial of his motion to suppress was based on Detective Wiebelt’s contradictory testimony. Specifically, he maintains that at the motion to suppress hearing, Detective Wiebelt testified that he saw his partner give chase to defendant’s companion before entering Perino’s, while at trial he testified that he was not aware of the companion’s attempt to flee until he returned from Perino’s.
The State responds that Detective Wie-belt had reasonable suspicion to conduct an investigatory stop considering the high crime nature of the area, suspicious and evasive actions of defendant and his companion, and defendant’s demeanor inside Perino’s restaurant. The State further asserts that reasonable suspicion ripened into probable cause to arrest for resisting an officer, and that the handgun was lawfully seized during a search incident to that arrest.
On June 12, 2013, defendant filed a motion to suppress the evidence. The suppression hearing on defendant’s motion was held on May 1, 2014, during which the following testimony was elicited.

Motion to Suppress Evidence Hearing:

As at trial, Detective Wiebelt testified that on February 20, 2013, he and his partner, Detective Whittington, were on proactive patrol near the 3700 block of the Westbank Expressway when they observed defendant and another male walking east. Detective Wiebelt explained that they were patrolling iii an unmarked Crown Victoria, regularly known as a law enforcement vehicle, with lights and sirens inside the windshield and lightly tinted windows. When defendant noticed the officers, he began to look around, as if looking for “an avenue of escape.” Detective Wiebelt testified that because defendant continued to monitor their ^position, they decided to conduct surveillance of the men. Upon pulling into the parking lot of the Motel 6/Perino’s Boiling Pot restaurant, defendant and his companion seemingly continued to monitor the officers’ location and then quickly entered Perino’s restaurant. The officers continued their surveillance until defendant’s companion exited the restaurant. At that time, the officers exited their vehicle, and Detective Whit-tington went to speak with defendant’s companion, who denied being with defendant and then “took off running.” While Detective Whittington detained- the companion, Detective Wiebelt walked into Per-ino’s where he observed defendant standing next to the front door with his back against the wall. Detective Wiebelt testified that he informed defendant that he was a police officer and asked defendant to step outside to speak with him. Because defendant refused to exit the restaurant, Detective Wiebelt escorted him out. Once outside, defendant continued to resist, was “uncooperative,” and became combative. Detective Wiebelt was eventually able to restrain defendant at which time he was advised of his Miranda rights and placed under arrest. While in custody, a search of defendant resulted in defendant’s handgun falling from his pants onto the ground. Detective Wiebelt confirmed that he approached defendant because of his nervous behavior and the conduct of his companion who was the first to exit Perino’s. He further testified that defendant would not have been escorted out of the restaurant had it appeared that he had a legitimate reason for being inside.
At the conclusion of the hearing, the trial court denied defendant’s motion to *312 suppress the evidence, finding that the gun was “seized pursuant to a lawful arrest.”
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and |7seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Burns, 04-175, p. 4 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. State v. Stone, 94-155, p. 4 (La.App. 5 Cir. 7/26/94), 641 So.2d 652, 655, writ denied, 95-0631 (La.1/6/97), 685 So.2d 129 (citing State v. Owen, 453 So.2d 1202 (La.1984)).
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Ayche, 07-753, p. 6 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148, writs denied, 08-2291 (La.1/30/09), 999 So.2d 752 and 08-1115 (La.2/13/09), 999 So.2d 1140. Moreover, a trial court’s pre-trial findings of fact involving the credibility of witnesses are entitled to great weight and will not be disturbed in the absence of clear abuse of discretion. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Robinson, 386 So.2d 1374 (La.1980); State v. Dunbar, 356 So.2d 956 (La.1978).
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. State v. Sam, 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769, writ denied, 08-1984 (La.5/15/09), 8 So.3d 577. The Terry standard, as codified in La.C.Cr.P. art. 215.1, authorizes law enforcement officers to stop and question a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit a criminal offense and demand |sthat a person identify himself and explain his actions. Id. La.C.Cr.P. art. 215.1; State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A person is seized within the meaning of Article I, Section 5 of the Louisiana Constitution when that person is either “actually stopped” or when an “actual stop” of the person is “imminent.” State v. Tucker, 626 So.2d 707 (La.1993); State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276. A person has not been “actually stopped” unless he submits to a police show of authority or is physically contacted by the police. An “actual stop” of the person is “imminent” only when the police come upon a person with such force that, regardless of the person’s attempt to flee or elude the encounter, an actual stop of the person is virtually certain. Id.
A lawful detention for questioning does not automatically give the officer authority to conduct a pat-down search for weapons. As the United States Supreme Court articulated in Terry v. Ohio, supra, “[e]ven after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.” Id., 392 U.S. at 27, 88 S.Ct. 1868.
Investigatory stops require reasonable suspicion of criminal activity. State v. Boss, 04-457, p. 5 (La.App. 5 Cir. *313 10/26/04), 887 So.2d 581, 585. In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. State v. Boyer, 07-0476, pp. 17-18 (La.10/16/07), 967 So.2d 458, 469-70 (quotations |flomitted; citations to quoted material omitted). Police do not have to observe what they know to be criminal behavior before investigating; the requirement is that the officers have a reasonable suspicion of criminal activity. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989.
The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference. Sam, supra. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. Boss, supra. An officer’s mere unparticularized suspicion or “hunch” of criminal activity is insufficient to establish reasonable grounds to stop a person. United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); State v. Barney, 97-777, p. 4 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, 1207.
Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 969; State v. Martin, 99-123, p. 6 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102. While an individual’s mere presence in a high crime area, standing alone, is insufficient to justify an investigatory stop, his presence.in a high crime area coupled with other suspicious actions upon the approach of the officers, give rise to reasonable suspicion for an investigatory stop. Barney, supra. Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of |inconduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. State in the Interest of J.H., 11-324, p. 8 (La.App. 5 Cir. 12/28/11), 83 So.3d 1100, 1106 (citing State v. Hall, 581 So.2d 337 (La.App. 3 Cir.1991)).
In the instant matter, defendant argues that the officers did not have reasonable cause to conduct an investigatory stop. The facts adduced at the suppression hearing and at trial indicate otherwise.[5]
At trial, the testimony established that Detectives Wiebelt and Whittington were on proactive patrol in a high crime area— known for drugs and crimes of violence— when they observed defendant and another *314 male walking along the lower level of the Westbank Expressway. Upon spotting the officers’ vehicle, defendant seemed to alert his companion as to the officers’ presence at which time the duo continued to nervously track the officers’ movement and began to look around as if looking for an “avenue of escape.”
Believing their behavior to be suspicious, the officers pulled into the parking lot adjacent to the Motel 6 and Perino’s— an area known for “drugs, guns, [and] stolen cars.” It was at this time that defendant and his companion “quickly changed directions” and then “quickly entered” Perino’s in what Detective Wiebelt believed to be an attempt to conceal themselves from view. The officers then continued surveillance. When defendant’s companion exited the restaurant and seemingly continued to search for the officers, the detectives exited their vehicle to investigate. When questioned by the officers, the companion denied being with defendant, which the officers knew to be a falsehood.
^Meanwhile, Detective Wiebelt proceeded inside Perino’s restaurant where defendant was standing next to the door with his back against the wall. According to Detective Wiebelt, defendant did not-appear to be a patron of the restaurant. When Detective Wiebelt identified himself as an officer and requested that defendant step outside, defendant began to “look around” and “tensed his body.” Upon escorting defendant out of the restaurant, defendant continued to resist and became combative. Once restrained and placed under arrest, defendant was read his Miranda rights by Detective Brens, at which time a handgun fell from defendant’s pants.
The alleged inconsistency in Detective Wiebelt’s testimony as to whether he observed defendant’s companion attempt to flee prior to entering, or after exiting Peri-no’s appears to be of little consequence as Detective Wiebelt testified that he entered Perino’s to further investigate based on the false statement made by the companion and defendant’s previously observed suspicious behavior. Upon entering the restaurant, his suspicion heightened at the sight of defendant with his back against the wall near the door appearing to have no legitimate reason for being inside Peri-no’s. Detective Wiebelt further testified that had defendant been making a purchase or appeared to have legitimate business inside Perino’s, he would not have escorted him outside.
In State v. Morton, 08-164, p. 7 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 656, this Court found that under the totality of the qircumstanees, the police had reasonable suspicion to stop the defendant. The evidence at both the suppression hearing and the trial established that the officers were patrolling in a high crime area. When the officers approached the area, the defendant and his companions attempted to hide. Specifically, the defendant moved from his position on the porch steps and knelt down beside them, and his companions attempted to hide | ^behind vehicles. Accordingly, this Court concluded that “[cjonsidering the high crime nature of the area as well as the suspicious actions and evasive conduct displayed by the defendant and his companions in the early morning hours,” the officers had reasonable suspicion to conduct an investigatory stop.
In State v. Collins, 04-751 (La.App. 5 Cir. 11/30/04), 890 So.2d 616, while on patrol in a high crime area at 9:36 p.m., officers saw the defendant walking across a parking lot. When the defendant noticed the officers, he began to walk between vehicles in the parking lot, turning his back to them. One of the officers *315 noticed the defendant tap his left side with his hand, which caused the officer to suspect that the defendant was concealing some type of contraband. The officer testified that while he did not see a gun at that point, the defendant’s movement indicated that he was checking on a weapon. Id., 04-751, 890 So.2d at 619. The officers exited their vehicle to question the defendant, which caused the defendant to adopt a defensive posture, which the officers described as “blading.” Id. The defendant then reached under his shirt and believing the defendant to be armed, the officers drew their weapons, forcing the defendant to drop his gun. Id. On appeal, the defendant asserted that his behavior leading up to the stop did not supply the officers with the requisite reasonable suspicion “because he did not act nervous, he did not attempt to flee, and the officers did not see him engaging in drug activity.” Id. This Court disagreed. This Court found that the defendant was in a high crime area, and once he saw the officers, began to exhibit furtive and evasive behavior, thereby raising the officers’ suspicions. Thus, “based on their experience, the officers interpreted the defendant’s movements as a sign that he was concealing a weapon or other contraband.” Id., 04-751, 890 So.2d at 619-20. Moreover, this Court went on to note that one of the officers’ testified that although he did not see the defendant committing a crime, he believed the defendant might have been | ^committing a crime. Id., 04-751, 890 So.2d at 620. Specifically, this Court found that “the defendant’s actions in ‘blading1 and reaching for something under his shirt were sufficient to provide reasonable suspicion.” Id.
In State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, officers were on routine patrol when they encountered the defendant, who was walking down the street. As the officers pulled alongside the defendant, he grabbed at his waistband and began running. Believing the defendant was carrying a weapon or contraband, the officers chased and eventually captured the defendant and retrieved a gun, which he had abandoned during the chase. The Fourth- Circuit found reasonable suspicion was lacking and further noted that the officers who chased the defendant did so only because he began running and had grabbed at his waistband. The Louisiana Supreme Court reversed the appellate court’s ruling, finding there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers, stating:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to-provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, 97-3065, 722 So.2d at 989.
Thus, the Louisiana Supreme Court found that, based on the officers’ observation, the defendant, upon seeing the marked police unit, began to run, holding his waistband as if he were supporting a weapon, constituted sufficient objective facts to raise reasonable suspicion that the defendant was engaging or about to engage in criminal activity, which justified the stop. Id.
| 14A1so, in State v. Bell, 10-1708 (La.App. 4 Cir. 7/20/11), 70 So.3d 1052, writ denied, 11-1798 (La.1/20/12), 78 So.3d 141, the defendant filed an appeal, seeking reversal of the trial court’s denial of his *316 motion to suppress evidence. The subject of the defendant’s motion to suppress was based on the following facts: while in their police unit, officers observed two black males standing in front of a restaurant. The two males became nervous upon observing the officers’ presence. Due to a rash of burglaries, the officers decided to do a pedestrian check, and because the subjects appeared very nervous, the officers also conducted a frisk of both subjects. Narcotics were found on the defendant, and he was placed under arrest. The court of appeal found that the officers articulated a rational basis for conducting an investigatory stop. Specifically, the court based its findings on the arresting officers’ observation that the defendant was standing at night in front of a closed business that had suffered a rash of burglaries. Moreover, the defendant behaved nervously and turned away upon seeing the officers, justifying the stop and frisk.
In the instant case, while defendant did not run from the detectives or grab at his waistband, he and his companion looked around nervously as if “attempting] to find an avenue of escape,” and then “quickly changed directions” to seemingly conceal themselves inside a restaurant located in a high crime area when the detectives made a U-turn into the parking lot of the Motel 6. See State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, where this Court found that presence in a high crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop.
1^Moreover, in State v. Taylor, 363 So.2d 699 (La.1978),[6] and State v. Wade, 390 So.2d 1309 (La.1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981), the Louisiana Supreme Court found that the presence of the defendant in a high crime area, coupled with nervousness or flight of the defendant, or other suspicious actions of the defendant upon approach by officers, was sufficient to justify an investigatory stop.
Specifically, in Wade, supra, two plainclothes police officers were on patrol in an unmarked vehicle in a high crime area when they observed the defendant walking in a hurried manner and continually turning his head “as if looking for someone.” When the officers approached him from the rear in their vehicle, the defendant caught sight of the vehicle and began to run. The defendant was pursued and stopped by the officers. At the time the officers made the decision to stop the defendant, they felt the defendant’s actions indicated he had just perpetrated a crime, but they had no knowledge that a crime had recently been committed, nor had they observed the defendant committing any crime. The Louisiana Supreme Court found that such actions constituted reasonable suspicion sufficient to justify an investigatory stop.
In this case, under the totality of the circumstances, we find that the high crime nature of the area, the nervous glances and suspicious behavior of defendant and his companion once the officers’ presence was detected, their action of “quickly changing directions” to conceal themselves in a nearby restaurant, coupled with the officers’ interaction with defendant’s companion who provided a false statement concerning defendant’s whereabouts, and *317 defendant’s evasive | ^demeanor inside Perino’s, provided the officers with reasonable suspicion sufficient to justify the investigatory stop.
We find this assignment to be without merit.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following is noted.
At the time the instant offense was committed, La. R.S. 14:95.1(B) provided for a mandatory fine of not less than one thousand dollars, nor more than five thousand dollars. In this case, neither the commitment nor the transcript reflects the imposition of the mandatory fine required under the statute. Neither party has raised this issue on appeal.
The Louisiana Supreme Court has held that an appellate court has the authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, even if the issue of an illegal sentence was not raised by the defendant or the State. State v. Campbell, 08-1226, p. 8 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. This Court has used that authority to notice the failure of the trial court to impose a mandatory fine and the authority to remand the matter to the trial court for imposition of a mandatory fine. However, this authority is permissive rather than mandatory. In Campbell, supra, this Court noted the defendant’s indigent status and declined to correct an illegally lenient sentence where the district court failed to impose a mandatory fine.
In the present case, it is noted that defendant is indigent as surmised by his representation by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to | ^defendant’s indigent status, we find that no corrective action is necessary and decline to remand this matter for imposition of the mandatory fine.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. We note that defendant’s appeal was premature when it was filed after conviction but before sentencing. However, this prematurity was cured by the subsequent sentencing. See State v. Nichols, 03-1317 (La.App. 5 Cir. 3/30/04), 871 So.2d 590, 596.

. Detective Whittington defined proactive patrol as "targeting] areas of high crime, or a *310 scene of influx and criminal activity of any sort and we go into that neighborhood with the intention of being proactive with traffic stops, suspicious persons stops. We run ... stolen vehicle checks."
Detective Wiebelt defined proactive patrol as "looking] for crimes that are about to happen or are happening, or crimes in progress ...”

. Detective Wiebelt was wearing plain clothes with his police badge hanging around his neck.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Although not required to do so, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court’s pretrial ruling on a motion to suppress. State v. Leger, 05-0011, p. 10 (La.7/10/06), 936 So.2d 108, 122, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007); Ayche, 07-753 at 5-6, 978 So.2d at 1148.

. In Taylor, the Louisiana Supreme Court held, where police officers observed the defendants running toward them at about 1:15 a.m. in an area where robberies, rapes, and purse snatchings were common, and after spotting officers, the defendants ceased running and commenced walking in the same direction, officers were entitled to detain and question defendants and conduct a limited weapons pat down.